Good morning, and welcome to the Ninth Circuit. Judge Miller, Judge Desai and I are glad that everybody's here and we're excited for two arguments that we have set for today. I'd just like to remind everybody to, you know, try and keep to your time and just sum up as it's coming down. If you want rebuttal time, let us know. We'll try and accommodate that. We will go ahead and we've got actually three cases have been submitted. That is Perez v. Garland, case number 22-1965. Espinoza v. Garland, case number 23-2583. And Corasani v. Mayorkas, case number 23-2772. And we'll go ahead and proceed with the first argument scheduled for today, and that is United States v. Phipps. That's the combined cases 21-50168 and 22-50280. Jesse Agatstein Good morning, I'm Jesse Agatstein, federal defenders on behalf of Mr. Phipps. I'll aim to reserve two minutes and I'll watch the clock. So the probation officer should not have been introduced as a in this case. He was not qualified and his methods were not independently found to be reliably applied. So because of that and because of the email hearsay errors, this court should reverse. So probation officer Marr fell way below the standard for what we usually think of when we think of experts. He wasn't qualified to testify about sanitizing, processing, and interpreting total without anybody checking his work. You know, it wasn't his primary job, which is... So how many do you need to do to be qualified? There's obviously no hard and fast rule, and of course this court reviews qualification for abuse of discretion. But taking his background cumulatively, you know, this wasn't his primary job supervising people on supervised release, wasn't his secondary job, which is, you know, installing and dealing with the monitoring software that comes from that. He had no academic background in forensics. He had no regularized and written protocols to compare against. He had no ability to explain the best practices in his community when asked, even though identifying the idea of best practices on direct. You know, the best practices, I had thought that the best practices, you've tried to pitch that as the best practices for conducting the software review. But as I read it, I thought that that inquiry was more about best practices of custody, chain of custody issues. So there were several moments where they asked about best practices that went from everything from sanitizing the actual hard drive itself to how one interprets and processes it. So it wasn't particularly about chain of custody. Obviously, chain of custody does matter when you're doing forensics work. If you pick up the wrong DNA sample, that impacts how reliable your methods are. You know, I think about it as a school nurse knows more than anyone in the building, but that doesn't qualify her to prescribe antibiotics or do surgery. You know, there's no doubt this probation officer was the most qualified in the probation unit to talk about software, but that doesn't mean he was qualified to talk about this specific forensics process. But even if this court disagrees on reliable application, the court really took the probation officer's word rather than independently analyze the question. The closest the court got in his findings was, I think the testimony from Officer Marr is that he applied the principles reliably. That's at ER 51. And because the party proffering the evidence must demonstrate in some objectively verifiable way that the expert has both chosen a reliable scientific method and followed it faithfully, that was not enough. That's Daubert 2, 43 at 3rd at 1319. And I'll say there's little to demonstrate in the record, objectively, that this officer did the right thing in the right way. You know, there are a bunch of ways. Let me back up because I know you've got all these arguments. Were these brought out? I mean, because I didn't see a lot of evidence from the defendant saying, hey, this is the best practices. This is how he fell short of the best practices. These are the deficiencies in his analysis. Is your argument that you just don't need to do that because he didn't meet the threshold? Or do you bear a burden to actually show that he got things wrong? So when it comes to Rule 702, the burden's on the party proffering evidence to prove reliable application. And once the party proffering the evidence has met, you know, enough to show, yes, these are the best practices. These are what I followed. Then, of course, it comes to the defendant to say, actually, no, these other best practices are the best. But here, the government didn't meet that initial burden to show here's what best practices are. And when the defense tried to elicit on cross, you know, you mentioned best practices from your training, from your expertise. What are those? The probation officer responded, well, actually, it wasn't really about lab management. Actually, I'm not totally sure what the difference between verification and validation is, et cetera. Why, I mean, to go back to your, you brought up the hypothetical of a school nurse, right? I mean, the school nurse is an expert, you know, is introduced as an expert to testify that a student had a fever, right? She can say, you know, I measured his temperature using an infrared thermometer, right? And nurse may not know how an infrared thermometer works, couldn't tell you how to design one. But they know that, you know, you point at the person's forehead and it reads the number, right? And you read the number off and, you know, that tells you whether or not they have a fever. And as I read what the district court was saying here, I think in substance, it's essentially that. I mean, you know, there's this, you know, computer program that you apply and, you know, the guy knows how to do that and he may not understand all the theory of how it works or, you know, how to design the best practices, but he knows how to use the program and that's what he did. So what's wrong with that way of looking at it? Or why would that be an abuse of discretion if that's how we understand what the district court thought? Yeah, so I think the probation officer himself said this was not just applying software. He said this is not push-button forensics like a typical cell phone download, for example. He said that at 5 ER 737, this is not push-button forensics. You have to know how to properly sanitize a hard drive. You have to know how to properly input the material. You have to know how to run the, then you have to know how to run the program in the right way. And so this is less like a fever. It's not surgery, right? This is not, but it's more in the lens of the middle ground, like prescribing medications in the sense that the probation officer himself said this is somewhat complicated. And so I think that's what makes the qualification issue concerning and why it was so important. I think even if this court thinks, well, this is at the boundaries of discretion for qualification, why it makes the district court's failure to make this independent reliability finding problematic. What's your best case though? Because you raised a whole bunch of problems, but you know, I'm looking at our case law. Brooks says you don't have to have prior expert testimony. Brooks also says you don't need to have a degree. Peer review is not dispositive under Daubert. What is your case that we can look on? I mean, as you know, abuse of discretion is a pretty high standard and it's quite frankly, if it is, as you just said, at the margins, the district court gets deference. So what's the case that says this was abuse of discretion? So I'll point out two things. So abuse of discretion goes to qualification. This court is reviewing de novo, whether the district court made a reliable application finding. Two different things. But I'll point this court toward Daubert II. I think Daubert II is the most helpful. And in it, it says, you know, relying entirely on the expert's unadorned assertions that the methodology they employed comports with standard procedures is not enough at 1319. And I'll point out, here's what could have gone wrong. The district court or the probation officer could have improperly sanitized the hard drive that he was transferring the material onto, thus mixing with prior investigations. And there was no sort of calibration validation saying, you know, here's when I sanitize, here's how I ensure it's properly done. And I'll just point out on prejudice, if this court finds that either the probation officer was either unqualified or the district court erred under this reliability finding, and on this record, this court, you know, thinks maybe the officer was reliable, maybe it was unreliable, then this court must reverse. So unless your honors have any further questions. You can reserve. Thank you. We'll hear from the government. Good morning, your honors. May it please the court, Mark Rahe for the United States. Your honors, the district court here did not abuse his discretion in qualifying probation officer Marr as an expert in the very narrow subject for which he was proffered. I think one thing it helps to step back. In their briefs, the defense almost tries to characterize it like the government put forth Officer Marr as this freestanding expert about everything having to do with forensics. It wasn't. It was just about his forensic imaging of the hard drive at issue. And he testified to the two discrete steps. The first one uses the Forensic Falcon hardware. The second one uses the Axiom software. He testified at length how the Falcon has three protections against data corruption. You know, it has the right blocker technology. It has the hash matching as the copying process goes on. And then it also has the ability to wipe the storage media. And then the Axiom software has a fourth built-in protection, which is that it's read-only software. Beyond that, Officer Marr wasn't called to testify about anything having to do with all these other things, you know, with computers. And one thing I find interesting in the reply brief, there's a lot of this testimony or reference to his testimony on unallocated space. And, you know, and I reread the record. If you look at the Dow Bear, first of all, our expert notice didn't say that he was being proffered as an expert in that. When you read the entire Dow Bear hearing transcript, there was never a single use of the word unallocated. Then at trial, his direct testimony, not a single use of the word unallocated. It was only on cross-examination that the defense first brought up this subject, asked him about it, because it went to their defense that this was in a place, the computer that had been deleted. So I just wanted to point that out because it's ironic. If the defense is now to be heard to complain about our use of an expert in a particular subject that we didn't proffer him for, but for which they opened the door and made an issue, that doesn't seem to prove the abuse of discretion. And even then, FBI agent Evans testified to the exact same thing about unallocated space that Officer Marr did. So, you know, even if you assume that that was outside his scope of expertise, it was the defense that brought that evidence up and it was undisputed that what he said was correct. Now, coming back to Dalbert, you know, the plain language of Rule 702 says somebody can be qualified by training or experience. Here, he had over 400 hours of training and he had 10 years of experience in the probation office doing computers, this sort of, you know, this narrow aspect of it. And he had testified that, you know, he had used, I think, the Axiom software 25 times since 2018. That's an excerpt of record 713. He had specific certification in that program. He kept up with the updates to that program. So, you know, when you look at the record that was put in front of the district court, it's hard to see how something, you know, Your Honor, you pointed out the abuse of discretion is a very hard standard to meet. And here, after a very defense has a separate argument that the application, I guess, of Dalbert was reviewed de novo. What's your response to that? You know, I'll assume that's correct. Like if somebody misstates the law, that ought to be de novo. But I would point out at Excerpt Record 4748, and this is the start where the district court delivers the multiple pages of findings. There's no question, first of all, that the court identified the right standard of law. It said that the expert testimony must be, quote, the product of reliable principles and methods and the experts reliably applied those principles and methods to the facts of the case. And then I know defense counsel had a quote during her presentation where it almost made it sound like it was tentative by the court. I see it, Excerpts of Record 5152. And this is one short sentence. So the court, to sum up, finds that the evidence is relevant, that the technique used was a reliable one, that the witness to be called regarding the use of the technique is qualified, does have experience in using it, and this last phrase is critical, and applied the methods that I found to be reliable. So we don't see how it can be said that even on a de novo standard review, the court properly identified the governing standard and then made that finding. And, you know, as we point out in our brief, I think the defense argument that the court somehow refused to make the reliability finding is based on taking its quotes elsewhere during the argument out of context. You know, at one point the court says, but that's not a Dalbert question. What it was referring to there, as we pointed out in our brief, were questions about chain of custody. And yeah, maybe in some cases chain of custody can go to reliability for Dalbert purposes, but we cite law, chain of custody is almost something that always goes to the weight of the evidence. And even here, you know, to the extent, I mean, the defense, you know, I think there was an argument that they couldn't verify whether he plugged in the right wires. Well, you know, first of all, he testified that he did, and the court didn't just rely on that. The court said, I've also found he's been trained in the use of it. And then when you look at his report as well that he made contemporaneous with his examination, and this is at Supplemental Record 277, he's contemporaneous notes at the time he's doing this investigation, suspect hard drive connected to left side and parent right block via SATA cables. So you have more than just his testimony at the hearing. And then on top of that, you know, there's a point that we make throughout our brief. We can't lose sight of the fact the defense had their own expert. And we know it's our burden under Dalbert. And I'll stand by the argument that we met that burden. But you would think, and the district court made this same observation, this same computer or this hard drive was made accessible to defense. They had an expert. If there was anything even remotely wrong or incorrect in the copying process, one would have thought that they would have brought that forth, but they never did. So if we put ourselves in the shoes of the district court, a thorough Dalbert hearing, Officer Marr discloses every aspect of his 400 hours of training and experience. You know, the most that you can do is sort of these, you look at the cross-examination, the kind of things that come out, the government's position would be that those all went to wait rather than admissibility. And they were free to make those cross-examination questions at trial, and they did. But if the standards of abusive discretion, the government would submit that that has been met. And unless the panel has any further... Do you want to address briefly the supervised release condition? Condition? Isn't there a... I'm sorry. I thought there was another issue on appeal. I'd like you to address the hearsay issue.  Okay. Yes, specifically because, as I understand it, the government did rely on the truth of the emails for concluding or for being able to establish that Mr. Phipps purchased the computer. So talk to me about why that doesn't create a hearsay problem. Absolutely, Your Honor. The way I read the record, I would respectfully disagree that we use those for the truth. Those emails were only introduced during the beginning part of the probation officer's testimony to explain why they conducted a search of Mr. Phipps. During every question, they say, what does it appear to show? What does it purport to show? And even, I believe, one of our prosecutors clarified, like, you don't know for a fact that that was what happened. And then set that aside. Take me to where you're referring to in the record when you're indicating that they weren't used for the truth, because I read the record differently. All right. Oh, boy. Give me a second. I'm sorry, Your Honor. A couple times not to have my papers ready here, but here we go. Okay, I'm looking at it. Right now, I'm signing from page 44 of the government's brief. And all these questions, they happened in volume two of the excerpt of the record, pages 200 through 204. Here's one example, at 200, question, what appears to be occurring here? Answer, it appears as though Mr. Phipps is on eBay and made an offer. What I would argue from that is, if you're saying something only appears to be happening, you're not using it. You're not using it. For the truth of the matter. Was there any limiting instruction telling the jury not to consider? No, and none was requested either. And in fact, as we point out, there was no objection. There was one objection. These are seven emails that are at issue. There was only one objection. The defense brief says, oh, there was repeatedly objected to all of this. That wasn't the case. But I would also point out that this happened, the defense says we relied on this in argument. That was zero mention of this in closing argument. All this happened, you know, a few of these were shown during opening statement, just to preview the evidence that would come. Never once mentioned in closing argument. Instead, what the government used to prove the fact that this computer belonged to Mr. Phipps, were the PayPal records, the purchase records, the postal service records, you know, the GPS monitoring would show that he had that or that that computer was delivered to his mother's address in Lemon Grove. And then GPS. What you're really talking about now is harmlessness, not about whether or not the emails. But again, you know, if it's if something is not being used for the truth of the matter, I mean, that's that was my, you know, my answer. I'm sorry if I wasn't clear about that. If the question is posed that what does this appear to do? What does this suggest to do? Or, you know, what do these emails suggest to you to probation officer tenure? It's my position that that's not asking for the truth of the matter, sir. It's just saying what was this effect on your actions? And, you know, the defense sites, a couple cases where sometimes, you know, the government backdoors all this evidence. These were six emails that were only used in opening statement. And then my point being with this other evidence was, you know, you cannot say credibly that this was essential to proving his possession of that computer when zero mention of those emails and closing argument. One would think if they were essential, that would have happened then. Instead, you have, you know, the recitation of all these other things that the case agent found. But again, you know, if we're not asking the witness to answer a question, you know, is that prove that he definitively did that, then I would say we weren't introducing it for the truth of the matter asserted, but just the effect on the listeners. So but beyond that, you know, again, the government would take the position that even if you find that those handful of emails and their opening statement reference was error, that it was harmless because this is non constitutional error, you know, and therefore it only it's a lower standard proof for harmlessness. So okay. Thank you. Appreciate you allowing me to go over my time. All right. So on the emails, first I'll say we did object several times. You know, I can point you to ER 200 and 201. Say objection here, say move to strike the next page at 201. Same objection. That's why the government doesn't argue we're looking at error here. On the second point, I'll say the government did use these emails for their truth. I'll point this court to ER 81 in their opening argument, where they say here are screenshots that showed not only that he was negotiating for, but actually purchased a Toshiba laptop and he had it delivered. Maybe you can address the harmlessness issue then, because I hear what friend is saying on the other side, that there are many, many other things that were considered, including the PayPal records, the eBay receipts that indicate the purchase of the laptop. So let's say that we agree with you that the emails were used for the truth. How do you get over the harmlessness issue? Yeah. So I'll say two things. One, the emails were very much more straightforward for the jury to look at. An email saying, hi, Adam, your order is being shipped is different than parsing through business records. And then I'll also point this court to Collicott, its case 92 F3rd at 984. That was also a hearsay case in which this court said when the government's overkill went to the heart of the case, it cannot conclude the error was more likely than not harmless. You know, this may have been overkill, but as in Collicott, it was really essential overkill that went to the heart of this case, whether Mr. Phipps owned the laptop. And given that it was used by the government to point the jury to his possession of the laptop, it's not more likely than not harmless. Thank you. Thank you to both counsel for your arguments in the case. The case is now submitted.
judges: NELSON, MILLER, DESAI